J-A23022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES STEVEN LEZINSKY | : | |
| | : | |
| Appellant | : | No. 915 MDA 2021 |

Appeal from the Judgment of Sentence Entered May 25, 2021
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000222-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES STEVEN LEZINSKY | : | |
| | : | |
| Appellant | : | No. 916 MDA 2021 |

Appeal from the Judgment of Sentence Entered May 25, 2021
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000223-2017

BEFORE:    BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: NOVEMBER 8, 2022**

James Steven Lezinsky (Appellant) appeals from the judgments of

sentence entered at two dockets in the Wyoming County Court of Common

Pleas, following his guilty pleas to two counts of fleeing or attempting to elude

---

[*] Former Justice specially assigned to the Superior Court.

a police officer (fleeing), graded as felonies of the third degree.[1]  The trial court imposed above-aggravated guideline range, maximum sentences of 42 to 84 months' imprisonment at each count, to run consecutively, for an aggregate term of seven to 14 years.  On appeal, Appellant avers the court abused its discretion by failing to consider mitigating factors, misconstruing his prior record, and improperly weighing factors already accounted for in the grading of the offenses and the sentencing guidelines.  We affirm.

## I. Facts & Procedural History

At trial docket CP-66-CR-0000222-2017 (Docket 222), the Commonwealth alleged the following.  On March 5, 2017, Meshoppen Borough Police Chief John Krieg attempted to stop Appellant, who was driving a red pickup truck, on SR 6 in Washington Township, Wyoming County.  Appellant "turned onto SR 4008 and slowed as if [he] was going to stop[, but] then fled."  Affidavit of Probable Cause, Police Criminal Complaint, Docket 222,

---

[1] 75 Pa.C.S. § 3733(a), (a.2)(2)(iii).  We note the trial court issued separate orders at each docket, and thus **Walker** is not implicated.  **See Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) ("[W]here a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case."), *overruled in part*, **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. Dec. 22, 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed).  In any event, Appellant properly filed two separate notices of appeal.  On August 10, 2021, this Court *sua sponte* consolidated the two appeals.

4/26/17, at 1. The officer pursued Appellant at speeds over 65 miles per hour in a 40 miles per hour zone, and "had to slam the brakes" to avoid a herd of deer that had jumped out. *Id.* The officer then continued to pursue Appellant, who continued to flee, before losing sight of him. *Id.* Two days later, Appellant's ex-girlfriend reported that on the night of the incident, Appellant called and asked her to pick him up. Appellant told her "he just out ran the police by Tyler Hospital and [was] hiding in the woods." *Id.* at 2. At this time, Appellant had a suspended license for driving under the influence (DUI). *Id.*

At trial docket CP-66-CR-0000223-2017 (Docket 223), the Commonwealth alleged that on May 6, 2017, Pennsylvania State Trooper Taylor Smith was on routine patrol on SR 92 in Nicholson Borough when he observed a red pickup truck, driven by Appellant, with an inoperable taillight. Trooper Smith followed Appellant a short distance. Appellant was following a vehicle within 50 feet and activated "'off road' lighting" that was mounted on the front of the truck. Affidavit of Probable Cause, Police Criminal Complaint, Docket 223, 4/26/17, at 1. Trooper Smither activated his emergency lights and siren, but Appellant failed to stop and instead

> passed the vehicle it was following without signaling and [traveled] at speeds of more than 80 MPH in a careless and reckless manner. [Trooper Smith] pursued the truck[, which] negotiate[d] turns in the opposing lane of travel at a high rate of speed. . . .

*Id.* Appellant "nearly crashed into the rear of [an] ambulance" that was stopped, for an unrelated matter, with emergency lights activated. *Id.* Appellant swerved into the oncoming lane without signaling, and nearly struck an oncoming vehicle and the two ambulance personnel standing outside the ambulance. These actions put the ambulance personnel at undue risk of harm, serious injury, or death. *Id.*

On March 18, 2019, Appellant entered a guilty plea to fleeing at Docket **223** only. As a part of this plea agreement, the charges at Docket 222, as well as unrelated docket "CR 103-17," were *nolle prossed*, although Appellant would pay restitution for those cases. Guilty Plea Agreement, Docket 223, 3/19/19. However, six months later, before sentencing, Appellant filed a motion to withdraw his plea, asserting his innocence. The trial court granted this motion on October 10, 2019.

Meanwhile, the reinstated charges at Docket **222** proceeded to a jury trial on January 19, 2021. Appellant appeared, but before jury selection was completed, he left the courthouse. Accordingly, that same day, the trial court issued a bench warrant for Appellant's arrest. Order, Docket 222, 1/19/21. Appellant also failed to appear for a status conference at Docket **223** on February 10th, and thus the trial court likewise issued a bench warrant in that matter. Appellant was apprehended on February 24th, 36 days after he left the courthouse. On May 11th, upon agreement of the parties, the trial court scheduled a jury trial for the July 2021 term. Order, 5/12/11.

However, Appellant subsequently agreed to an open plea deal, and on May 25, 2021, proceeded to a combined plea and sentencing hearing on both dockets.[2] Pursuant to the parties' agreement, Appellant pleaded guilty to one count of fleeing at each docket, graded as felonies of the third degree. N.T. at 5. While Appellant was on bail, he also incurred four new arrests — two in Susquehanna County and two in Wyoming County.[3] As part of his plea agreement, Appellant would pay restitution of $695.07 for one of the cases, "103 of 2018, which is to be *nolle prossed*[,]" and the charges at "magisterial docket, R103445-6" would likewise be *nolle prossed*. **Id.**

Appellant was 63 years old at the time of the plea and sentencing hearing. N.T. at 41. He had a prior record score of 5, and the offense gravity score for each count of fleeing was 5. The standard range guideline for each count was 12 to 18 months. The mitigated range guideline was 9 months and the aggravated range 21 months. As stated above, each count was graded as a felony of the third degree, and the statutory maximum sentence was 84 months, or 7 years. **See** 18 Pa.C.S. § 1103(3).

_____

[2] The hearing was conducted by video. **See** N.T., 5/21/21, at 4.

[3] The given docket numbers for these matters were: (1) Susquehanna County MDJ docket CR-181 of 2020; (2) Susquehanna County MDJ docket 227 of 2020; (3) Wyoming County criminal docket 103 of 2018; and (4) "OTN R103445-6." N.T. at 47-48.

The Probation Department recommended an **aggregate** sentence of 24 months to 168 months, which was within the standard range.[4] Appellant argued the trial court should adopt this recommendation. N.T. at 41. The Commonwealth deferred to the court's discretion. *Id.* at 46.

In his allocution, Appellant stated he left the trial on January 19, 2021, because he was "scared and [his] anxiety got the best of" him. N.T. at 43. With respect to the underlying charges of fleeing, Appellant stated he did not "know why [he] didn't pull over:" "I knew I was going to get caught. I should have turned myself in. I . . . was confused . . . I made a bad decision[.]" *Id.* at 43-44. Appellant's counsel argued Appellant had health problems, including a fall from a tree the previous summer, which resulted in "numerous cracked ribs, some heart problems, some bleeding around his heart[,]" and three or four hospitalizations. *Id.* at 37.

The trial court stated it reviewed "the extensive pre-sentence investigation report" (PSI), as well as the affidavits of probable cause. N.T. at 32-33. The court imposed sentences of 42 to 84 months' imprisonment for each fleeing count, to run consecutively, for an aggregate term of seven to 14

---

[4] This recommendation was set forth in a one-page, undated "Sentence Recommendation Sheet," prepared by the Probation Department. This sheet was included in Appellant's reproduced record as a part of the PSI; however, it was not a part of the PSI that appears in the certified record. Nevertheless, as the Commonwealth does not dispute the accuracy of this information, we will consider it. *See Commonwealth v. Landis*, 89 A.3d 694, 697 n.5 (Pa. Super. 2014).

years. *See id.* at 46, 50. Each sentence was above the aggravated range guideline, as well as at the statutory maximum.

The trial court acknowledged the sentences were outside the aggravated guideline range, and provided six reasons for the sentences. First, Appellant's conduct posed "a severe threat" to the officers in pursuit, other motorists, and the public. N.T. at 49. Second, Appellant was charged with four new crimes while on bail: (1) possession of a firearm and hindering apprehension or prosecution in Susquehanna County; (2) possession of drug paraphernalia, also in Susquehanna County; (3) theft in Wyoming County; and (4) witness tampering, also in Wyoming County. *Id.* at 47-48. The court acknowledged Appellant "has only been charged and has not been convicted" of these offenses, but the court considered it "highly unusual and the first time in [the court's] judicial career that a person has been charged with four separate offenses in two different counties while on bail supervision." *Id.* at 48. Next, the court considered the above two factors — the commission of the underlying offenses along with the four new criminal matters while on bail — showed Appellant "is an extreme threat to himself and . . . society as a whole." *Id.* at 49.

The trial court's fourth reason for sentencing above the aggravated range guideline was Appellant's "continual[ ] fail[ure] to take responsibility for these matters." N.T. at 48. The court acknowledged Appellant had a right to seek withdrawal of his first plea, but nevertheless considered the "delay in

reaching this matter to final conclusion." *Id.* Fifth, the trial court considered that Appellant left the courthouse, during his trial proceedings in January of 2019, "and became a fugitive from justice. [Appellant] was aware that he was in violation of his bail conditions, [as] he was told by his attorney to turn himself in[, but he] refused to do so, causing the US Marshal[ ] Service and other law enforcement to arrest him[.]" *Id.* at 48-49. Finally, the trial court considered Appellant's "lengthy criminal record commencing in 1977[,] that previously, all sentencing and/or probation has failed to address [his] criminal propensities[,]" and that any sentence other "than a lengthy prison term would [not] be appropriate[.]" *Id.* at 49.

Appellant filed timely post-sentence motions at each docket, which were denied. He then filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(b) statements of errors complained of on appeal.

## II. Statement of Questions Involved

Appellant raises one issue for this Court's review:

Did the trial court abuse its discretion in sentencing . . . Appellant to manifestly excessive sentences, individually and in the aggregate, and disproportionate to the circumstances by failing to consider mitigating circumstances, relying upon reasons already accounted for in the guidelines and motor vehicle statute and disregarding Appellant's age, serious health issues, acceptance of responsibility, expression of remorse and the rehabilitative needs of . . . Appellant, impact upon the community and the need for protection of the public pursuant to 42 Pa.C.S.A. § 9721(b)?

Appellant's Brief at 5.

### III.  Preservation of Discretionary Sentencing Claims

As Appellant presents a challenge to the discretionary aspects of his sentence, we note:

> An appeal raising the discretionary aspects of sentencing is not guaranteed as of right; rather, it is considered a petition for permission to appeal.  In order to reach the merits of a discretionary aspects claim, we must engage in a four-part analysis to determine:
>
>> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.
>
> *       *       *
>
>> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.  A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*See Commonwealth v. Mulkin*, 228 A.3d 913, 916 (Pa. Super. 2020) (some citations omitted).

Here, Appellant filed a timely notice of appeal and timely post-sentence motion.  We observe, however, that he argues several mitigating factors for the first time on appeal — (1) the fact that his parents and all of his siblings are deceased, which has affected "his psychological makeup, . . . poor

decisions and activity[;]" (2) his lifelong residence at the same address in Susquehanna County; and (3) his long time self-employment, from which he made "a respectable amount of money."[5]  **See** Appellant's Brief at 32-34. Because these claims were not raised at the sentencing hearing or in Appellant's post-sentence motion, they are waived.  **See Mulkin**, 228 A.3d at 916.  **See also** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").  Appellant's argument, that the Commonwealth did not submit victim impact statements, is similarly waived on the same basis.  **See Mulkin**, 228 A.3d at 916; Appellant's Brief at 24.

However, Appellant's remaining issues — discussed **infra** — were properly preserved in his post-sentence motion.  **See Mulkin**, 228 A.3d at 916.  Furthermore, his brief includes a Rule 2119(f) concise statement of the reasons relied upon for allowance of appeal.  **See** Pa.R.A.P. 2119(f).  Finally, this Court has held that Appellant's present claims — that the trial court relied on impermissible factors and ignored mitigating evidence in imposing a sentence above the aggravated range guidelines — raise a substantial

---

[5] Rather than stating the amount of his income, Appellant's counsel twice refers this Court to the PSI for that information.  Appellant's Brief at 12, 34. The PSI, in turn, stated Appellant earned $30,000 weekly.  Wyoming County Pre-Sentence Investigation (undated), at 4 (unpaginated).

question. *See Mulkin*, 228 A.3d at 916. Accordingly, we proceed to consider his arguments.

### IV. Appellant's Arguments

Appellant advances multiple arguments that the trial court abused its discretion by imposing a manifestly excessive and unreasonable sentence. Preliminarily, he points out the minimum sentences of 42 months were "double the highest end of the aggravated range of the guidelines[,]"[6] and the maximum terms of seven years were "the maximum sentence[s] allowed at law." Appellant's Brief at 19, 24. Appellant contends the Commonwealth did not seek a sentence outside the standard range guideline. *Id.*

Appellant's first claim is that the trial court failed to consider mitigating factors, and merely made a "passing reference" to the PSI. Appellant's Brief at 29. He refers to: his age of 63; his attempt, though unsuccessful, to enroll in the Wyoming/Sullivan County drug court;[7] and his poor health, which included anxiety, his "need to control his illicit drug use," high blood pressure, and serious injuries following a fall from a tree. *Id.* at 31-34. Appellant maintains that, contrary to the court's finding, he did accept responsibility for his conduct; he reasons that "trial [was] scheduled for July 2021, [but he]

---

[6] As stated above, the aggravated range guideline was 21 months.

[7] Appellant acknowledges he was a resident of Susquehanna County, which was "an impediment" to admission into the Wyoming and Sullivan County drug court. Appellant's Brief at 33.

instead chose to immediately plead guilty[.]" *Id.* at 35, 37. Appellant also points out that the COVID-19 pandemic caused trial delays. *Id.* at 37-38.

Appellant's next claim is that the trial court improperly considered factors that had already informed the sentencing statutes and guidelines. First, he contends the court improperly focused on his prior record because it was already factored into his prior record score. Appellant's Brief at 31. In any event, he asserts, the trial court's characterization of his prior history as "lengthy" was inaccurate. *Id.* at 31. Instead, Appellant alleges, he merely had "a sporadic past history, interspersed with long periods" of being crime-free, and he did not have any "revolving door history[.]" *Id.* at 31, 41. Appellant summarizes that he: (1) had two criminal charges in 1977 and two more criminal charges 1980; (2) did not incur another criminal charge for 22 years; (3) had a DUI in 2004; and (4) nine years later, in 2017, committed the instant two fleeing charges. *Id.* at 11-12.

Second, Appellant avers the trial court erred in considering that his commission of the two underlying fleeing offenses placed others in danger, because this element was already a part of the grading of the offense and reflected in the offense gravity score. Appellant's Brief at 39-40, *citing* 18 Pa.C.S. § 3733(a.2)(2)(iii) (fleeing is graded as a felony of the third degree if offender endangers a law enforcement officer or member of general public due to engaging in a high-speed chase).

Third, Appellant alleges the court erred in considering his four new charges. Appellant's Brief at 36. He reasons that three of those matters "had not even reached . . . a preliminary hearing" and none of the prosecutors initially "sought or fully prosecuted revocation of . . . bail." *Id.* at 36-37. Appellant, however, concedes his bail was revoked when he absconded from trial in January of 2021. *Id.* at 37. Furthermore, with respect to the charges at docket 103-2018, which were *nolle prossed*, he nevertheless paid restitution as a part of the instant plea deal. *Id.* Appellant also denies he was a "fugitive" when he absconded from trial, as the trial court characterized him. *Id.* at 38. In support, he asserts there was no "large manhunt" for him, he did not have "to be physically taken down[,]" and he "was apprehended within 36 days[.]" *Id.*

Appellant concludes this Court should vacate his judgment of sentence pursuant to Sub-section 9781(c)(3) of the Sentencing Code, which mandates a remand for resentencing if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." Appellant's Brief at 26, *citing* 42 Pa.C.S. § 9781(c)(3). We conclude no relief is due.

## V. Standard of Review & Relevant Authority

We consider the relevant standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted). "[W]hen imposing sentence, the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Mulkin*, 228 A.3d at 917.

This Court has also stated:

[W]hen imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant. . . .

Furthermore, [a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence[.] The sentencing court, however, must also consider the sentencing guidelines.

*Clemat*, 218 A.3d at 960 (citation omitted & paragraph break added).

When imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation.

However, where the sentencing judge had the benefit of a pre-sentence investigation report . . . it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Id.* at 959-60 (citations omitted & paragraph break added).

- 14 -

With respect to aggravated-range sentences and so-called "double counting" factors, this Court has explained:

Generally, "[i]t is impermissible for a court to consider factors already included within the sentencing guidelines as the sole reason for increasing or decreasing a sentence to the aggravated or mitigated range." **However, "[t]rial courts are permitted to use factors already included in the guidelines if they are used to supplement other extraneous sentencing information."**

When deciding whether a court improperly has based an aggravated sentence on a factor that is already considered by the sentencing guidelines, we have stated:

[t]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a norm for comparison, *i.e.*, the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases. . . . The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather, upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.

Moreover, "[a]n aggravated range sentence [is] justified to the extent that the individual circumstances of [the defendant's] case are atypical of the crime for which [the defendant] was convicted, such that a more severe punishment is appropriate."

*Clemat*, 218 A.3d at 960 (citations omitted & emphasis added). "It is well-settled that where 'the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, the sentence will be upheld.'" *Mulkin*, 228 A.3d at 917.

Finally, "Section 9781(c) of the Sentencing Code directs this Court to vacate a sentence and remand to the sentencing court if 'the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.'" *Commonwealth v. Smith*, 206 A.3d 551, 567 (Pa. Super. 2019), *citing* 42 Pa.C.S.A. § 9781(c)(3).

## VI.  Analysis

First, we observe the trial court did not specifically address mitigating factors.  Nevertheless, the court stated both at the sentencing hearing and in its opinion that it reviewed the "extensive" PSI.  N.T. at 32; Trial Ct. Op., 8/4/11, at 4.  Accordingly, we may presume the court properly "weighed all relevant information regarding the defendant's character against any mitigating factors."  *See Mulkin*, 228 A.3d at 917.  Appellant's argument, that the court merely made a "passing reference" to the PSI, does not undermine this presumption.  *See* Appellant's Brief at 29.  In any event, at the sentencing hearing, Appellant specifically argued the court should consider his poor health, including heart problems and the injuries resulting from a fall from a tree the prior summer.  N.T. at 37, 40.

Additionally, Appellant's portrayal that he "chose to immediately plead guilty" in May of 2021, following the scheduling of a second jury trial for July of 2021, wholly ignores the fact he absconded from the first trial in January of 2021 and refused to turn himself in, against his attorney's advice. ***See*** Appellant's Brief at 35. Elsewhere in his brief, Appellant minimizes the significance of this evidence, by rationalizing there was no "large manhunt" for him, he did not have "to be physically taken down[,]" and, ostensibly, he was merely at large for 36 days. Appellant's Brief at 38. However, the trial court weighed the same evidence differently, and Appellant's present argument would require this Court to reweigh the evidence in his favor and supplant the court's findings with our own. This we may not do. Instead, we defer to the trial court's discretion in weighing the reasons for the delays in this matter. ***See Clemat***, 218 A.3d at 959.

Next, we find no abuse of discretion in the totality of the trial court's reasons for imposing sentence. As stated above, it is generally "impermissible for a court to consider factors already included within the sentencing guidelines as the **sole reason** for increasing . . . a sentence to the aggravated . . . range." ***Clemat***, 218 A.3d at 960 (emphasis added). A court may consider "factors already included in the guidelines if they are used to supplement other extraneous sentencing information." ***Id.*** Here, we do not review the court's reasons for the sentence in isolation, but instead in context with each other. Although the court considered the risk of danger caused by

- 17 -

Appellant in the two underlying fleeing offenses, this factor was not the sole reason for departing from the sentencing guidelines — and we note Appellant does not claim it was. Instead, the trial court stated multiple, varied reasons for the sentence, including Appellant's absconding from the first jury trial and his incurring **four** new charges in two different counties while on bail — which the trial court noted was not only particularly unusual, but also the first the court had encountered in its years on the bench. ***See*** N.T. at 50.

Furthermore, the trial court properly considered Appellant's prior record. We reiterate that Appellant committed the fleeing offenses while his license was suspended due to a DUI conviction. His present attempt to portray his criminal history, which is not in dispute, in a different light is again an appeal to this Court to reweigh the evidence in his favor. While Appellant highlights long periods of crime-free conduct, we defer to the trial court's weighing of his eight prior criminal cases, which included burglary, theft, manufacture of controlled substances, and possession of firearms, and which spanned 43 years and four counties. ***See*** Wyoming County Pre-Sentence Investigation at 2. Again, the trial court considered this history along with, and in context of, the fact Appellant absconded from the courthouse during trial proceedings **and** incurred four new criminal cases while on bail on these charges. Accordingly, we cannot conclude the trial court's consideration of these factors was so improper to warrant a remand for a new sentence. ***See Clemat***, 218 A.3d at 959-60.

Finally, we reiterate the trial court found prior prison and probation terms have "failed to address [Appellant's] criminal propensities" and "all previous attempts of rehabilitation have failed." N.T. at 49-50. Accordingly, the court found a long prison term was necessary in light of his "lengthy criminal record commencing in 1977[.]" *Id.* at 49. The court had wide discretion in sentencing and properly considered all the relevant factors. *See Clemat*, 218 A.3d at 960. Appellant has not established the court acted with partiality, prejudice, bias, or ill will against him. *See id.* at 959. Thus, we affirm the judgments of sentence.

## VII. Conclusion

Having concluded no relief is due on Appellant's sentencing challenge, we affirm the judgments of sentence.

Judgments of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/8/2022

- 19 -